UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

Petra Camarillo,                    )
                                    )  No. CV-06-3034-MWL
            Plaintiff,              )
                                    )  ORDER GRANTING DEFENDANT'S
v.                                  )  MOTION FOR SUMMARY JUDGMENT
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social             )
Security,                           )
                                    )
            Defendant.              )
                                    )

BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on October 2, 2006. (Ct.
Rec. 13, 15).  Plaintiff Petra Camarillo ("Plaintiff") filed a
reply brief on September 28, 2006.  (Ct. Rec. 17).  Attorney David
L. Lybbert represents Plaintiff; Special Assistant United States
Attorney Daphne Banay represents the Commissioner of Social
Security ("Commissioner").  The parties have consented to proceed
before a magistrate judge.  (Ct. Rec. 5).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).

**JURISDICTION**

On September 22, 2005 Administrative Law Judge ("ALJ") R.J. Payne issued a decision finding the plaintiff was not under a disability as defined in the Social Security Act at any time relevant to this matter. (Administrative Record, "AR," 17-28).

Plaintiff filed an application for Disability Insurance (AR 66-68) and Supplemental Security Income ("SSI") benefits (AR 221-223) alleging right arm pain (AR 18, 80). The application was denied initially and on reconsideration.

On March 10, 2005 and on August 3, 2005, plaintiff appeared for hearings before ALJ R.J. Payne. At the March 10, 2005 hearing testimony was taken from the plaintiff and medical expert, Daniel Girzadas. (AR 233-271). At the August hearing testimony was taken from plaintiff and vocational expert Daniel R. McKinney. (AR 272-282). On September 22, 2005, the ALJ issued a decision finding that plaintiff was not disabled. (AR 17-28). The Appeals Council denied a request for review. (AR 5-8). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 12, 2006. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 47 years old on the date of the ALJ's decision. (AR 18, 263). She completed the seventh grade in school. (AR 18, 247-248). Her past relevant work consists of work as a care provider/home

attendant.  (AR 18, 258-260).  Plaintiff indicated that she has not performed substantial work since the date of her surgery on March 3, 2002.  (AR 258-259).

At the administrative hearing held on March 10, 2005, plaintiff testified that she was currently living with her boyfriend in a small house. (AR 247).  She stated that she is 5'1" tall and weighs 155 pounds.  (AR 263).  She testified that she cannot work because her neck and right arm hurt and bother her all the time.  (AR 251).

With regard to daily activities, plaintiff stated that she takes care of all of her personal needs including bathing, dressing and grooming, does housework including mopping floors and vacuuming, cooks meals, washes dishes, and watches television and listens to the radio.  (AR 260-262, 265).  She testified that she has a driver's license with no restrictions on it and had driven about an hour to get to the administrative hearing.  (AR 249-250) Though plaintiff testified she did not do that much walking (AR 254) when asked by the ALJ about her social activities, plaintiff stated that "[w]e go out to eat . . . or we go out to [the] mall, walk around.  I go, sometimes I just go to the stores to walk around."  (AR 262).

She indicated that she takes about four fifteen minute naps a day when her shoulder pain is severe.  (AR 269).  The frequency of the naps she described as "[a]ll week I mean every day".  (AR 269).  She testified that four days a week are substantially worse so that she cannot function.  (AR 269).  She takes Ibuprofen for the pain.  (AR 253, 209).
///

Medical expert Daniel V. Girzadas, M.D., testified at the administrative hearing held on March 10, 2005.  (AR 236-246).  Dr. Girazadas stated that plaintiff sustained an injury to her right shoulder and during that shoulder examination he noted that she had pain and difficulty in raising it.  (AR 237).  He indicated that x-rays of her shoulder and neck were reported as normal.  (AR 237).  An MRI taken February 14, 2002 showed a rotator cuff tear which was surgically repaired.  (AR 19-20, 155).  Post operatively plaintiff did fairly well and on August 12, 2005 it was noted that she could return to work.  (AR 238).  Dr. Girazadas opined that plaintiff would not meet or equal any of the listings of impairment.  (AR 242).

Dr. Girazadas testified that plaintiff's exertional limitations in his opinion would be that she could lift 20 pounds occasionaly, she could frequently lift 10 pounds, and there was no limitation on standing, walking or sitting.  Pushing and pulling would be limited in the upper extremities to the weight restrictions for lifting.  She could balance, kneel, crouch, stoop and climb ramps or stairs occasionally.  She could not climb ladders, ropes or scaffolds and reaching on the right should never be above shoulder height.  There was no limitation to handling, feeling and fingering and there was no visual or communication limitations.  Dr. Girazadas testified plaintiff should never be around unprotected heights or hazardous moving machinery on the job.  (AR 243).

Vocational expert Daniel R. McKinney testified at the administrative hearing held on August 3, 2005.  (AR 274-281).  Mr. McKinney indicated that plaintiff's past work includes work as a

home attendant which is classified as medium, semi-skilled work, but which was performed at light levels as described by the plaintiff. (AR 275-276).

Mr. McKinney testified that plaintiff could do her past relevant work as she had performed it. (AR 277). However, Mr. McKinney also testified that a person of plaintiff's age, educational level and exertional limitations would be capable of performing a broad range of sedentary and light jobs, such as assembly occupations, packaging and machine operators, and production inspectors and checkers (AR 277-278).

On cross-examination, Mr. McKinney agreed that in order to perform the assembly, packaging and filling machine jobs as well as the production inspector and checker jobs, a person needs to look "down at product, look back and forth at product, and working with . . . hands outstretched on more likely a frequent to continuous basis". (AR 281).

The ALJ found that the plaintiff could return to her past relevant work as described and as it is generally performed regionally and nationally. (AR 25). Alternatively, the ALJ found that even if plaintiff could not return to her past relevant work, under a step 5 analysis, there was other work that exists in significant numbers in the regional and national economy that plaintiff could perform. (AR 25-26).

The ALJ concluded that the plaintiff retains the capacity for work that exists in significant numbers in the national economy and is not disabled. (AR 26).

///

///

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a ///

"significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since her alleged onset date, March 4, 2002.  (AR 18).  At step two, the ALJ found that plaintiff has the severe impairment of right shoulder tendonitis status post rotator cuff repair but that impairment did not meet or medically equal one of the Listings impairments.  (AR 27).

The ALJ concluded that plaintiff has the RFC to perform a wide range of light work.  (AR 27).

At step four of the sequential evaluation process, the ALJ found that plaintiff has the RFC to perform the exertional requirements of her past relevant work as described.  (AR 27). The ALJ found that plaintiff has transferable skills from semi-

skilled work.  (AR 27).  In addition and alternatively, the ALJ determined,  based on the vocational expert's testimony and plaintiff's RFC, age, and education, that there were a significant number of jobs in the national economy which she could perform despite her limitations.  (AR 27).  Examples of such jobs included work both light and sedentary as an assembly, packaging and filling machine, operator production inspector and checker.  (AR 27).  Accordingly, the ALJ determined at step five of the sequential evaluation process that plaintiff was not disabled within the meaning of the Social Security Act.  (AR 28).

### ISSUES

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.   The ALJ did not properly consider and credit the opinions of plaintiff's treating physician Nicolae Oprescu M.D.;

2.   The ALJ improperly concluded that plaintiff was not fully credible and improperly rejected plaintiff's subjective complaints;

3.   The ALJ's step four decision was not properly supported by substantial record evidence; and

4.   Plaintiff was not capable of performing the jobs identified by the ALJ at step five.

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

///

**DISCUSSION**

**A.  Medical Evidence**

Plaintiff contends that the ALJ erred by failing to incorporate limitations found by Nicolae Oprescu, M.D.  (Ct. Rec. 13-1, pp. 12-16).  The Commissioner responds that the ALJ properly evaluated the medical evidence and properly rejected the opinions of Dr. Oprescu.  (Ct. Rec. 16, pp. 6-12).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a non-examining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

1995).   The ALJ must also have other evidence to support the

decision such as laboratory test results, contrary reports from

examining physicians, and testimony from the claimant that was

inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d

at 751-52; *Andrews*, 53 F.3d 1042-43.   Moreover, an ALJ may reject

the testimony of an examining, but non-treating physician, in

favor of a non-examining, non-treating physician only when he

gives specific, legitimate reasons for doing so, and those reasons

are supported by substantial record evidence.  *Roberts v. Shalala*,

66 F.3d 179, 184 (9th Cir. 1995).

   The ALJ determined that the limitations assessed by Dr.

Oprescu were not supported by the record evidence and therefore

accorded little weight to the same.  (AR 24).

   Though the ALJ erred in concluding that the fact "the

Physicians Statement and Physical Medical Source Statement was

obtained by the claimant's attorney . . . affects the weight to be

accorded his opinion", the ALJ set forth a number of other very

specific reasons for discounting the opinions of Dr. Oprescu.

Because the ALJ provided other reasons that are supported by

substantial evidence in the record for rejecting Dr. Oprescu's

opinions, that error is considered harmless by this Court.

   On April 11, 2003 Dr. Oprescu referenced an assessment and

conclusion of plaintiff's earlier treating physician, Dr. Brent

Bingham, and concluded that the limitations determined by Dr.

Bingham in July, 2002 remained the same and plaintiff was limited

to lifting not more than 40 pounds and not raising the right arm

over shoulder height.  Dr. Oprescu further referenced Dr.

Bingham's earlier conclusion that "[t]he patient is capable of

gainful employment on a reasonable continuous basis" subject to
the limitations mentioned. (AR 173-174). Dr. Oprescu referenced
the same limitations for plaintiff after his examination of
plaintiff on May 9, 2003, July 22, 2003, and October 14, 2003.
(AR 188, 180, 190). Dr. Oprescu continued to see and treat the
plaintiff on January 13, 2004, February 4, 2004, June 14, 2004 and
September 17, 2004 without any significant changes in his findings
or assessment. (AR 20-21, 191-194).

On March 14, 2005 Dr. Oprescu opined that plaintiff was
"[u]nable to lift more than 10 pounds on a repetitive basis. She
is unable to use right arm above shoulder height." An x-ray
ordered by Dr. Oprescu as part of his exam on March 14, 2005
showed no radiographic evidence of acute injury but did show a 5
MM of sclerosis in the bony glenoid. (AR 215, 216). The record
reflects that an x-ray of the right shoulder taken October 23,
2001 showed "a small bone island or area of sclerosis again in the
subchondral aspect of the glenoid." (AR 129). There were no new
or different physical findings indicated by Dr. Opsecu as a result
of his March 14, 2005 exam of the plaintiff. The ALJ noted as a
reason for discounting Dr. Oprescu's opinion the fact that Dr.
Oprescu changed his opinion on March 14, 2005 regarding
plaintiff's limitations even though "the only limitation is the
same that was found in earlier examinations." (AR 24). As
medical support for Dr. Oprescu's limitations first given on March
15, 2005 plaintiff notes that it was in March, 2005 when repeat x-
rays confirmed the 5mm area of sclerosis in the bony glenoid. The
medical records, however, indicate that in October, 2001 the
///

abnormality to which plaintiff refers was indicated in x-rays of the right shoulder.  (AR 120, 128, 129).

In his Medical source Statement dated September 9, 2005, Dr. Oprescu opined that plaintiff could sit 2-3 hours at a time, stand for 1-2 hours at a time, walk for 3/4 to 1 hour at a time, lift 5 pounds frequently and 6-10 pounds occasionally.  He further opined that plaintiff's use of both feet was limited for repetitive movements as in pushing and pulling and that plaintiff's right hand was limited in grasping and fingering.  The doctor further found that plaintiff had moderate environmental restrictions.  He also noted that plaintiff most likely had "cervical & lumbrosacral nerve root" involvement that would prevent plaintiff "from performing hard labor.  I think she would be able to perform light duty work." (AR 217-219).

Dr. Oprescu's treatment notes reflect no complaints by the plaintiff nor treatment by the doctor with respect to the cervical or lumbrosacral areas.  The only examination of plaintiff's neck as reflected in Dr. Oprescu's notes was on March 14, 2005.  The doctor on that date indicated "[s]he has no limitation on range of motion of her neck. (AR 214).  The ALJ correctly noted as one of the reasons for discrediting Dr. Oprescu's opinions that they were inconsistent with his own clinical findings and inconsistent with the objective findings and opinions of the other doctors, who were orthopedic specialists, who had treated or examined the plaintiff. (AR 24).

X-rays of the cervical spine taken by Dr. Gouveia on October 16, 2001 showed the cervical spine in normal alignment with good preservation of the disc spaces.  (AR 128).  After a physical

examination of the plaintiff on March 1, 2002 Dr. Brent L. Bingham, an orthopedic surgeon, noted that "[t]here is full ROM of the cervical, dorsal and lumbar spine." (AR 135).

Dr. Bingham performed the surgery for the rotator cuff repair and treated plaintiff post-operatively through August, 2002. (AR 148, 155). On August 29, 2002 Dr. Bingham noted that the plaintiff "has had no previous problems with her shoulder." Examination of the right upper extremity showed 140 degrees of forward flexion and 180 degrees of abduction. The wrist was also examined by Dr. Bingham and he noted "[t]here is a full grip and full ROM." Dr. Bingham reported that plaintiff's "condition at this time is fixed and stable, and no additional treatment is indicated." (AR 154). Dr. Bingham reported that plaintiff had been released to light duty work, that plaintiff was doing housework before and "she was placed on restrictions for that type of work." (AR 153).

An independent medical examination was conducted by orthopedic doctor Raymond Palesch on July 17, 2002. (AR 138-147). At that exam plaintiff had 180 degrees of abduction in her shoulder and was able to touch her ears. Testing of grip resulted in inconsistent results which led Dr. Palesch to conclude there was a lack of effort. (AR 144). The doctor reviewed x-rays dated October 23, 2001 and diagnosed a pre-existing benign bone island in the glenoid right shoulder. (AR 145). As a result of his examination, Dr. Palesch concluded "[t]his patient does not have any significant positive objective physical findings on examination today. What she does have is significant pain magnification behavior and functional overlay and complaints that

are not explainable on an orthopedic, neurologic or radiologic basis." (AR 145). Dr. Palesch further noted that plaintiff's "subjective complaints were totally disproportioned to the objective findings of which there are none" and opined that plaintiff was capable of employment on a continuous basis with restrictions of not lifting or carrying more than 40 pounds and not using her right arm above shoulder height. (AR 146-147).

A Residual Functional Capacity ("RFC") assessment on July 2, 2003 indicated plaintiff was able to work an 8 hour day/40 hour workweek but that she was restricted to lifting no more than 40 pounds occasionally, 25 pounds frequently and could not lift overhead or push/pull frequently or overhead with her right arm. (AR 163).

The ALJ's RFC determination, that plaintiff retains the RFC to perform sedentary and light work, is consistent with and is supported by the detailed medical findings and opinions in the record.

Contrary to plaintiff's arguments, the ALJ properly considered the opinions of Dr. Oprescu and gave a number of specific reasons supported by medical evidence in the record for discounting those opinions. Since the ALJ's finding regarding plaintiff's limitations is consistent with the credible medical evidence of record, the undersigned finds that plaintiff's argument to the contrary is without merit.

**B.  Credibility**

Plaintiff argues that the ALJ erred in assessing testimony regarding her functional limitations. (Ct. Rec. 13-1, pp. 15-21). Plaintiff specifically argues that the ALJ erred in finding

plaintiff's difficulties are not supported by clinical findings of abnormality that could reasonable be expected to produce such symptomatology.  The Commissioner responds that the ALJ appropriately gave clear and convincing reasons to discredit plaintiff's testimony.  (Ct. Rec. 16, pp. 12-16).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ considered all of the evidence submitted related to plaintiff's subjective complaints, including her activities of daily living, prior work record, precipitating and aggravating factors, use of medication and therapy, alleged and/or demonstrated functional restrictions, and the stated frequency and intensity of the alleged symptoms, and determined that plaintiff was not fully credible.  (AR 27).  In support of this finding, the ALJ made reference to testimony that plaintiff was able to perform

- 17 -

activities of daily living such as vacuuming, mopping, sweeping the kitchen, cooking and laundry.  The ALJ also noted that plaintiff's assertions are not supported by clinical findings. The ALJ referred to the IME performed by Dr. Palesch and the findings and observations made by the doctor and noted with interest that plaintiff "was able to get into her own sports bra very quickly" which was no easy feat and when tested for light touch or pinprick plaintiff, while stating she could not feel the pin, grimaced and pulled away.  (AR 20).  The ALJ also found it notable that despite the limitations claimed by plaintiff she was able to drive for almost an hour to the hearing and was also able to sit through the hearing without a break or having to stand. (AR 23).  In the course of the ALJ's opinion, the ALJ made reference to the fact that plaintiff's impairments required only routine and/or conservative care and that the only medication plaintiff took was Ibuprofen, which plaintiff at one point told Dr. Oprescu kept her comfortable.  (AR 23).  The ALJ further referenced the fact that plaintiff was able to complete the disability forms without assistance even though she testified she cannot read or write and is unable to read even an "easy magazine."  (AR 24).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  The

Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

After reviewing the record, the undersigned judicial officer finds that the reasons provided by the ALJ for discounting plaintiff's subjective complaints are sufficient and supported by substantial evidence in the record. Accordingly, the undersigned finds that the ALJ did not err by concluding that plaintiff's allegations regarding her limitations are not totally credible in this case.

**C.  Step Four**

At step four the ALJ found that plaintiff was able to perform her past relevant work as a home attendant. (AR 25, 27). Plaintiff contends that decision is not supported by the evidence of record. (Ct. Rec. 13-1, pp. 19-21). The Commissioner concedes that the ALJ's finding that plaintiff could return to her past relevant work as a home attendant was not supported by the record. (Ct. Rec. 16, pp. 17-18). Though the ALJ found that plaintiff retained the RFC to perform the duties as a home attendant in the manner she described her duties, the ALJ did not discuss the specific exertional and non exertional requirements of the job as actually performed by the plaintiff nor did the ALJ discuss whether the requirements of the job as actually performed by plaintiff were consistent with the job as it is generally performed in the national or regional economy. That error however is harmless because the ALJ made an alternative step five finding

///

that there were other jobs in the national economy that plaintiff could perform.[1]

**D. Step Five**

Plaintiff contends that the ALJ erred in not accepting the testimony of the VE when given a second hypothetical that plaintiff would not be capable of gainful employment.  That second hypothetical assumed the limitations opined by Dr. Oprescu.  The ALJ properly rejected those limitations based on specific clear and convincing reasons and therefore was not required to incorporate those limitations in the hypothetical to the VE. *Batson v. Commissioner*, 359 F. 3d 1190 (9th Cir. 2004).

The ALJ took the testimony of vocational expert Daniel R. McKinney.  Mr. McKinney testified that plaintiff would be capable of performing sedentary and light, unskilled entry level occupations and identified specific regionally and nationally. (AR 26).

The ALJ accepted the vocational expert's testimony and determined that there were a significant number of jobs in the national economy which plaintiff could perform despite her limitations.  (AR 26).  Accordingly, the ALJ determined that plaintiff was not disabled.  (AR 26).

Again, the ALJ did not err by finding that plaintiff could perform the sedentary and light unskilled jobs of assembly, packaging/filling machine operator, and production inspector and

---

[1]An error is harmless when the correction of that error would not alter the result.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995).  Further, an ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)(*citing Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

checker.  (AR 26).

**E.  Disability Pursuant to 20 C.F.R. §404.1562(a)**

Plaintiff argues that she should be found disabled pursuant
to 20 C.F.R. §404.1562(a), the so-called worn-out worker provision
applicable to those having a "marginal education, work experience
of 35 years or more during which they did only arduous, unskilled
physical labor, and the claimant is no longer able to do that kind
of work."  Such workers are presumed to be disabled and entitled
to benefits under this regulation.  (Ct. Rec. 17, pp. 6-7).  The
Commissioner responds that plaintiff's reliance on this regulation
is misplaced because she does not meet all of its requirements;
specifically, her past relevant work as a home attendant was
classified by the DOT as semi-skilled rather than unskilled.  (Ct.
Rec. 16, p. 20).

Plaintiff did not raise this argument at the hearing. While a
social security hearing is not adversarial, that does not remove
the burden of proof of disability from a claimant. In part because
disability hearings are not adversarial, the ALJ "has a duty to
develop the record . . . even when the claimant is represented by
counsel." *See DeLorme v. Sullivan*, 924 F. 2d 841, 849 (9th Cir.
1991); *see also Higbee v. Sullivan*, 975 F. 2d 558, 561 (9th Cir.
1991). However, an ALJ cannot be expected to consider an argument
not raised.

Even if plaintiff raised the worn-out worker argument, the
Commissioner is correct.  The VE testified that plaintiff's past
relevant work was in fact semi-skilled. (AR 275).  Plaintiff
concedes her work history spans fifteen, not 35, years as required
by the regulation. (Ct. Rec. 13-1, p. 4). Plaintiff's work as a

home attendant is variously described as of medium or light exertion rather than arduous.  (AR 275, 25).  For any of the foregoing reasons the ALJ was not required to find plaintiff disabled pursuant to this regulation.

<u>**CONCLUSION**</u>

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that plaintiff is able to perform sedentary and light unskilled work is supported by substantial evidence and free of legal error.  Therefore, Plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **DENIED.**

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is **GRANTED.**

3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

IT IS SO ORDERED.

**DATED** this __4th__ day of December, 2006.

                    s/Michael W. Leavitt
                    MICHAEL W. LEAVITT
              UNITED STATES MAGISTRATE JUDGE